# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-1331V
Filed: November 30, 2020
PUBLISHED

| | |
|---|---|
| SUSAN KAY HINE,<br><br>    Petitioners,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Special Master Horner<br><br>Attorneys' Fees and Costs<br>Decision; Reasonable Hourly<br>Rate; Expert Costs |

*Bradley Ryan Hine*, Boise, ID, for petitioner.
*Althea Walker Davis*, U.S. Department of Justice, Washington, DC, for respondent.

### DECSION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

Petitioner filed this case on August 30, 2018, alleging that she suffered anaphylaxis and Guillian-Barre Syndrome ("GBS") resulting from her September 21, 2015 influenza ("flu") vaccine. On September 13, 2019, respondent filed a Rule 4(c) Report recommending against compensation. (ECF No. 25.) The parties subsequently filed expert reports (ECF Nos. 29, 37) and petitioner filed the instant motion for interim attorneys' fees and costs on September 18, 2020. (ECF No. 40.) Respondent filed a response on October 2, 2020, deferring to my determination as to whether the requested award is reasonable and appropriate. (ECF No. 41.)

On October 28, 2020, I issued an order noting certain issues requiring clarification within petitioner's motion, including whether attorneys' fees were incurred, and ordered petitioner to file an amended motion. (ECF No. 42.) That amended motion

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

was filed on November 7, 2020.  (ECF No. 43.)  Petitioner's filings confirm that petitioner's counsel splits his time between a solo practice and in-house employment as a commercial attorney.  He has less than four years of experience and is petitioner's adult son.

Respondent filed a response to the amended motion on November 18, 2020.  (ECF No. 45.)  Respondent incorporated by reference his prior response and further deferred to my discretion regarding the question of whether attorneys' fees had been incurred. (*Id*.)  Petitioner filed no reply.  Accordingly, petitioner's motion is now ripe for resolution.

Petitioner seeks reimbursement of interim attorneys' fees and costs totaling $33,920.11, including $14,133.00 for attorneys' fees and $19,787.11 for costs.  For the reasons discussed below, petitioner's motion is GRANTED; however, petitioner is awarded interim attorneys' fees and costs in a reduced amount of $20,071.95.

## I.     An Interim Award of Attorneys' Fees and Costs is Appropriate

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs."  § 300aa–15(e)(1)(A)–(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis.  *Avera v. Sec'y of Health & Human Servs*., 515 F.3d 1343, 1352 (Fed. Cir. 2008).  In his response, respondent deferred to my judgment as to whether this statutory standard has been met in this case.  (ECF No. 41, p. 3.)  Although there are clearly issues yet to be resolved in this case, the injury alleged is not unusual for this program and petitioner has secured expert support for her claim.

Attorneys' fees and costs are generally payable at the conclusion of an action, but the Federal Circuit has also concluded that interim fee awards are permissible and appropriate under the Vaccine Act upon a showing of undue hardship.  *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010) (noting that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees.").  In *Avera v. Secretary of Health & Human Services*, the Federal Circuit explained that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained."  515 F.3d at 1352.  In denying an interim fee award, the *Avera* court reasoned that "[t]he amount of fees here was not substantial; appellants had not employed any experts; and there was only a short delay in the award pending the appeal."  *Id*.

In applying the hardship standard set by *Avera* and *Shaw*, special masters have assessed several factors.  For example, in *Chinea v. Secretary of Health & Human Services*, the special master observed three factors that have been considered when

exercising discretion to award interim attorney's fees include: (1) whether the fee request exceeds $30,000, (2) whether the expert costs exceed $15,000, and (3) whether the case has been pending for over 18 months.  No. 15-95V, 2019 WL 3206829, at *2 (Fed. Cl. Spec. Mstr. June 11, 2019) (citing *Knorr v. Sec'y of Health & Human Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017)).

In this case, the amount of the outstanding expert costs identified for reimbursement (though not awarded) and the duration of the case are consistent with the factors discussed in *Chinea*.  Significantly, an additional unusual factor bearing on hardship is that petitioner's counsel is a part-time solo practitioner with limited prior legal experience and petitioner is bearing her own expert costs in this case.  Petitioner has represented in a separate motion for extension of time to file an expert report that she will face difficulty meeting her obligation without resolution of this application.  (ECF No. 44.)  I exercise my discretion to allow an award of interim fees and costs.  Petitioner is cautioned, however, that successive motions for interim fees and costs are disfavored.[2]  *See, e.g.*, *Kottenstette v. Sec'y of Health & Human Servs.*, No. 15-1016V, 2019 WL 5709372, at *2 (Fed. Cl. Spec. Mstr. Oct. 11, 2019).

## II. Determining Whether Fees Were "Incurred"

In his amended motion, petitioner's counsel confirms that he is the adult son of the petitioner.  (ECF No. 43, p. 2.)  This presents a further threshold issue of whether petitioner actually "incurred" or became legally obligated to pay for legal services rendered in light of this familial relationship.

As noted above, section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs."  § 300aa–15(e)(1)(A)–(B).  However, such an award is predicated on the fees and costs having been "incurred."  *Id*.  A cost is only "incurred" when the petitioner assumes a legal obligation to pay.  *McCulloch v. Sec'y of Health & Human Servs.*, 923 F.3d 998 (Fed. Cir. 2019) (discussing "incurred" in the context of future costs to maintain guardianship.); *see also Black v. Sec'y of Health & Human Servs.*, No. 90–3195V, 33 Fed. Cl. 546, 550 (1995)

---

[2] Vaccine Rule 21(b) places the burden of prosecution on petitioner and a failure to prosecute may result in involuntary dismissal.  This rule operates whether petitioner proceeds with counsel or without any counsel on a *pro se* basis.  In either event, there is now no question that petitioner is aware of the scale of attorneys' fees and costs that can be incurred in an action such this, the expectation that additional costs will likely be incurred, and the considerations that go into determining what constitute reasonable fees and costs and whether they should be awarded on a final or interim basis.  Although genuine hardship does favor interim awards for fees and costs, petitioner will also bear some obligation to manage these considerations moving forward and demonstrate the presence of an actual hardship before filing any further motion for interim fees and costs, especially where she has already been relieved of the burden of previously incurred costs.  The fact that petitioner may choose to continue pursuing this case without an attorney willing and able to carry the financial burdens of prosecution will not automatically serve as a basis for further interim awards and will not relieve her of her obligation to follow orders and prosecute this case under Vaccine Rule 21(b).  Petitioner should not assume that future deadlines will be extended or waived based merely on the fact of a pending motion for interim attorneys' fees and costs.

("One incurs an expense, therefore, at the moment one becomes legally liable ..."), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996).

In *Kooi v. Secretary of Health & Human Services*, the special master denied attorneys' fees to petitioner's husband, an attorney, who had acted on behalf of petitioner in prosecuting the case. No. 05–438V, 2007 WL 5161800, at *2 (Fed. Cl. Spec. Mstr. Nov. 21, 2007). The special master reasoned that "[a]lthough the undersigned is not aware of any prohibition against an attorney-spouse acting on behalf of a spouse, the relationship to be categorized as an attorney-client relationship for purposes of 'incurred' costs must be evidenced by a formal, established relationship." *Id*. at *4. In the absence of a documented attorney-client relationship, the special master concluded that the spouse's legal work constituted "self-help" activities that could not be compensated. *Id*. at *5.

Such reasoning is not unique to the spousal relationship and has similarly been applied, for example, where the attorney was the petitioner's brother. *Underwood v. Sec'y of Health & Human Servs.*, No. 00-357V, 2013 WL 3157525 (Fed. Cl. Spec. Mstr. May 31, 2013). In rare instances, however, an attorney who is also a family member may present sufficient evidence of an attorney-client relationship to warrant reimbursement of legal fees incurred. *E.g.*, *Doherty v. Sec'y of Health & Human Servs.*, No. 15-1429V, 2020 WL 2958291, at n.8 (Fed. Cl. Spec. Mstr. May 7, 2020) (awarding attorneys' fees to attorney who was also petitioner's father-in-law); *DiFazio v. Sec'y of Health & Human Servs.,* No. 09-530V, 2017 WL 2417322 (Fed. Cl. Spec. Mstr. May 10, 2017) (awarding attorneys' fees to attorney who was also petitioner's father).

Here, in the absence of any challenge by respondent, I find that petitioner has adequately demonstrated the presence of an attorney-client relationship obligating counsel to perform legal services for his client and obligating his client to pay for those legal services notwithstanding their familial relationship. Specifically, petitioner's counsel maintains a solo practice and has filed a representation agreement under that practice's letterhead setting forth the scope of representation. This agreement was signed by both petitioner and counsel in advance of any of the work performed in this case. Consistent with the terms of that agreement, expert costs were initially invoiced to counsel and ultimately paid by petitioner, which in itself provides some evidence of conduct consistent with her liability under the agreement. Counsel has also maintained contemporaneous hourly billing records reflective of an attorney-client relationship. (ECF No. 43, pp. 9-11, 17-18.) Moreover, counsel also stresses that he is a member of the bar of the U.S. Court of Federal Claims (a prerequisite to an award of attorneys' fees) and has been recognized as the counsel of record prosecuting this case. (*Id*. at 4.) Additionally, he holds himself out publicly as an attorney accepting vaccine injury claims.[3]

---

[3] The Office of Special Masters maintains, and posts on the Court of Federal Claims website, a list of practicing attorneys from around the country that have expressed a willingness to accept vaccine injury cases. Petitioner's counsel appears on that list.

### III.     Determining the Amount of an Award of Reasonable Attorneys' Fees

It is "well within the special master's discretion" to determine the reasonableness of fees.  *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").  Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work.  *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008).

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  *Avera*, 515 F.3d at 1347.  This is a two-step process.  *Id.* at 1347-48.  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  *Avera*, 515 F.3d at 1348.  Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond.  *See Sabella v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

#### A. Determining Reasonable Hourly Rates

A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Avera*, 515 F.3d at 1348 (citation and quotation omitted).  In *Avera*, the Federal Circuit found that in Vaccine Act cases, the special master should use the rate prevailing in the forum, *i.e.*, Washington, D.C., in determining an award of attorneys' fees unless the bulk of the work is completed outside of the forum and there is a "very significant difference" between the forum hourly rate and the local hourly rate.  515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Spec. Serv. Dist. v. U.S. Envtl. Prot. Agency,* 169 F.3d 755 (D.C. Cir. 1999)).  Idaho attorneys have previously been found entitled to forum rates. *Garrison v. Sec'y of Health & Human Servs.*, No. 14-762V, 2016 WL 3022076 (Fed. Cl. Spec. Mstr. Apr. 29, 2016) (determining hourly rates for an attorney located in Twin Falls, Idaho, based in part on prior cases from the U.S. District Court for the District of Idaho.)

The decision in *McCulloch v. Secretary of Health & Human Services* provided a further framework for consideration of appropriate forum rates for attorneys' fees based upon the experience of the practicing attorney.  No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motions for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015).  The Office of Special Masters has since updated

the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016, 2017, 2018, 2019, and 2020 can be accessed online.[4]

Mr. Hine represents that he was admitted to the Idaho State Bar in 2017. (ECF No. 43, p. 19.) This appears to be his first and only case to date in the Vaccine Program.  Mr. Hine has billed for work performed from 2018, when he had about one year of legal experience, through 2020, when he had about three years of legal experience.  He has requested an hourly rate of $238 for work performed in 2018, $243 for work performed in 2019, and $253 for work performed in 2020.  Each of these rates is consistent with the top rate for attorneys with up to four years of experience on the Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for the corresponding year.  However, in light of his overall level of legal experience and limited experience in his program, I find that his 2018 through 2020 rates should be adjusted downward to $179 per hour, $202, and $229 respectively.

For 2018, the lowest hourly rate that any attorney will be paid in the ordinary course under the fee schedule is $159 per hour while an attorney with four years of legal experience will be paid at a minimum rate of $238, a difference of $79 per hour.  For 2019, the minimum rate for any attorney is $162 while the minimum rate for an attorney with four years of experience is $243, a difference of $81 per hour.  For 2020 the difference is $84.  Accordingly, it could be reasoned that in the abstract the fee schedule values a year of legal experience during the first four years of practice at approximately $20 per hour (specifically $19.75 for 2018, $20.25 for 2019, and $21 for 2020).  Because Mr. Hine had one year of legal experience in 2018, the minimum hourly rate plus $20 per hour results in an hourly rate of $179 per hour.  For 2019, the minimum hourly rate plus $40 results in an hourly rate of $202.  For 2020, the minimum hourly rate plus $60 per hour results in an hourly rate of $229. This calculation provides only a rough estimate of a reasonable hourly rate.

Specific attorney rates are set, not by abstract calculation, but based on a number of fact-intensive considerations relating to attorney skill, performance, and reputation in the legal community.  *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *17.  For an attorney with less than four years of experience, any professional reputation beyond good standing will likely be limited.  Moreover, in this case, petitioner has not otherwise provided any additional information that would substantiate any upward adjustment from this basic, abstract calculation.  In fact, in addition to this being counsel's first vaccine case, petitioner's amended motion confirms that Mr. Hine divides his time between his solo practice and unrelated duties as an in-house commercial attorney for H.P., Inc. (ECF No. 43, p. 2.)  Nor does counsel's own prosecution of this case to date alternatively suggests the need for any upward or downward adjustment based on skill or performance.

---

[4] Each of the Fee Schedules for 2015 through 2019 can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are derived from the decision in *McCulloch*, 2015 WL 5634323. The schedules for 2017 and later years are adjusted for inflation using the Producer Price Index for Offices of Lawyers ("PPI-OL").

An additional issue arises in that I have concluded, for reasons discussed below, that some of the work billed by Mr. Hine constitutes paralegal work that must be billed accordingly. Mr. Hine has not suggested that he employs any paralegal nor has his application for attorneys' fees and costs proposed or substantiated any specific hourly rate for paralegal work. For the years 2018 through 2020 fee schedules allow for minimum paralegal hourly rates of $132, $135, and $141 respectively. Because no higher rate has been substantiated, these minimum rates will be applied with respect to any work that is more appropriately billed at paralegal rates.

### B. Assessing the Hours Billed

Upon review of counsel's billing records, I find that the hours billed are reasonable and there is no cause to reduce the number of hours billed. However, some of the work performed is better characterized as paralegal in nature and should have been billed at a reduced rate. *E.g.*, *Riggins v. Sec'y of Health & Human Servs.,* No 99-382V, 2009 WL 3319818, at *25 (Fed. Cl. Spec. Mstr. June 15, 2009) (explaining that "[i]f counsel elects to have an attorney perform [clerical] activities, it is in counsel's discretion. However, the time spent by an attorney performing work that a paralegal can accomplish should be billed at a paralegal's hourly rate, not an attorney's.").

In 2018, Mr. Hine billed 29.5 hours for collection and review of petitioner's medical records. In 2019 he billed a further 3.6 hours for the same activity. In 2020, he billed 1.5 hours for receipt, review, and filing of medical records. Although review of medical records relative to assessing petitioner's appropriate allegations would be attorney work, collection and filing of medical records is paralegal work. Because Mr. Hine did not differentiate his billing as between collection and review, I will award only about 25% of these hours at an attorney rate. The remaining hours will be compensated at paralegal rates. To the extent the amount of attorney time may actually have been higher, petitioner bears the burden of substantiating fee requests with clear billing records, including by avoiding block billing. *E.g.*, *Mostovoy v. Sec'y of Health & Human Servs.*, No. 02-10V, 2016 WL 720969, at *6 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (explaining that petitioner bears the burden of documenting the fees claimed and reducing the awarded fees due to block billing and vague entries).

In 2018, Mr. Hine also billed 4.3 hours preparing and filing documents. In 2019 he billed 0.9 hours preparing and filing medical records. In 2020, he billed 2.2 hours coordinating payment to petitioner's expert and 0.6 hours filing medical records. These hours will also be compensated at a paralegal rate.

In sum, Mr. Hine's time will be compensated as follows:

- In 2018, 36.3 hours were billed, of which 26.725 hours will be compensated at a paralegal rate[5] and the remaining 9.575 hours will be compensated at an attorney rate; and

- In 2019, 9.4 hours were billed, of which 3.6 hours will be compensated at a paralegal rate[6] and the remaining 5.8 hours will be compensated at an attorney rate; and

- In 2020, 14 hours were billed, of which 3.925 hours will be compensated at a paralegal rate[7] and the remaining 10.075 hours will be compensated at an attorney rate.

## IV.   Determining an Award of Reasonable Costs

### A. Expert Costs

The vast majority of costs for which petitioner seeks reimbursement are those associated with the expert report prepared by Dr. Galina Nikolskaya, a board-certified neurologist with a subspecialty in neurophysiology.  (ECF No. 29-1, p. 15.)  Dr. Nikolskaya has to date billed petitioner $19,250.00.  (ECF No. 40, pp. 2-4.)  This represents 27.5 hours billed at a rate of $700 per hour.  (*Id*.)  Petitioner's amended motion reflects that these expert costs were paid directly by petitioner.  (ECF No. 43, p. 1.)

Reasonable expert costs are calculated using the same lodestar method as is used when calculating attorneys' fees.  *Masias v. Sec'y of Health & Human Servs*., No. 99-697V, 2009 WL 1838979, at *37 (Fed. Cl. Spec. Mstr. June 12, 2009).  An expert retained by the petitioner in the Vaccine Program will only be compensated at a reasonable hourly rate, and the petitioners have the burden of demonstrating that the expert costs incurred were reasonable.  *Ceballos v. Sec'y of Health & Human Servs*., No. 99-97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004).

Many Vaccine Program cases provide a framework for determining the appropriate rate for experts in this program at rates up to $500 an hour.  *See O'Neill v. Sec'y of Health & Human Servs.,* No. 08–243V, 2015 WL 2399211, at *17 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (awarding an hourly rate of $400 to an expert in neurology); *Dingle v. Sec'y of Health & Human Servs*., No. 08-579V, 2014 WL 630473, at *8 (Fed.

---

[5] 29.5 hours (multiplied by 0.75) plus 4.3 hours is 26.725 hours.

[6] 3.6 hours (multiplied by 0.75) plus 0.9 hours is 3.6 hours.

[7] 1.5 hours (multiplied by 0.75) plus 2.8 hours is 3.925 hours.

Cl. Spec. Mstr. Jan. 24, 2014) (expert did not have "specialized knowledge and experience" in the case to justify his requested hourly rate of $500 and, accordingly, rate was reduced to $400 per hour); *Allen v. Sec'y of Health & Human Servs.*, No. 11-051V, 2013 WL 5229796, at *2 (Fed. Cl. Spec. Mstr. Aug. 23, 2013) (approving a rate of $500 per hour for an expert in neurology and immunology and who also had expertise in a pertinent area to the issue in the case); *Chen Bou v. Sec'y of Health & Human Servs.*, No. 04-1329V, 2007 WL 924495, at *10, *16 (Fed. Cl. Spec. Mstr. Mar. 9, 2007) (awarding an expert a rate of $350 per hour based in part on his poor performance in testifying at hearing, but noting that "[b]ased upon the information submitted [ ], with the appropriate set of facts the undersigned would have no issue with awarding the $500 requested by petitioner")). This is not an absolute ceiling. Rather, the Court of Federal Claims has recently observed that for neurologists, an hourly rate between $450 to $500 has been "typical." *Lewis v. Sec'y of Health & Human Servs.*, 149 Fed. Cl. 308, 317 (2020).

In *Lewis v. Secretary of Health & Human Services*, the court remanded the case back to the special master for a more detailed explanation of the $400 per hour rate awarded for the work of the neurologist in that case (Dr. Charleston). 149 Fed. Cl. 308, 321. On remand, the special master observed that the rate of $500 per hour is not routinely awarded and has most often been reserved for neurologists who also have specialty in immunology, which is itself highly relevant to litigation in this program. *Lewis v. Sec'y of Health & Human Servs.*, No. 15-907V, 2020 WL 6071671, at *7-8 (Fed. Cl. Spec. Mstr. Sept. 11, 2020); *accord Smith v. Sec'y of Health & Human Servs.*, No. 18-43V, 2020 WL 1243238, at *9 (Fed. Cl. Spec. Mstr. Feb. 20, 2020).

In awarding Dr. Charleston a rate of $400 per hour, the *Lewis* special master noted that Dr. Charleston did "not possess extraordinary credentials that justify a very high hourly rate." *Id*. at *8. Specifically, Dr. Charleston earned his M.D. at Wayne State University in 2005, about 11 years prior to his initial involvement in the *Lewis* case in 2016, and became board certified in neurology and psychiatry in 2009, further specializing in headache medicine in 2012. *Id*. at *6. He had authored 16 peer reviewed articles. *Id.* The special master noted the rate awarded for Dr. Charleston's work is the same as that which has been previously awarded to the work of Dr. Tornatore, a frequent neurology expert in this program who is a professor of neurology at the Georgetown University Medical Center and the Vice Chairman of the Department of Neurology at MedStar Georgetown University Hospital. *Id*. at *7-8.

As compared to Dr. Charleston, Dr. Nikolskaya's career is of comparable length relative to her involvement in this case. She earned her M.D. in 2010 from the Wright State University Boonshoft School of Medicine in Dayton, Ohio, and achieved her initial board certification in neurology in 2015. (ECF No. 29-1, p. 15.) Although Dr. Nikolskaya indicates that her position at Harbor-UCLA Medical Center includes an instructional role, she holds no academic appointment. (*Id*. at 16.) She has authored only two publications, neither of which is directly relevant to this case. (*Id*. at 17.)

9

However, because this case involves a potential peripheral nerve condition and interpretation of EMG and nerve conduction studies may be significant to this case, her added subspecialty in neurophysiology and her clinical experience with the condition(s) at issue are directly relevant to this case.  Moreover, whereas Dr. Nikolskaya's work in this case was invoiced in 2020, it appears that Dr. Charleston's work in *Lewis* was performed between 2016 and 2019.  No. 15-907V, 2020 WL 831998, at *1 (Fed. Cl. Jan. 24, 2020), *reconsideration denied*, No. 15-907V, 2020 WL 1283461 (Fed. Cl. Feb. 20, 2020), and *aff'd in part, remanded in part*, 149 Fed. Cl. 308 (2020).  Balancing these factors, I find that a $425 per hour rate, a rate slightly above that recently awarded to Dr. Charleston for his earlier work, is reasonable.

Regarding the hours billed, "[t]he question is not whether [the expert] expended the numbers of hours claimed, but whether it was necessary or reasonable for [her] to do so."  *Baker v. Sec'y of Health & Human Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (quoting *Wasson v. Sec'y of Health & Human Servs.*, No. 90-208V,1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded*, 24. Cl. Ct. 482, 483 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993)).  "One test of the 'reasonableness' of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation would be willing to pay for such expenditure."[8]  *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2016 WL 4729530 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (citing *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319819, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009); *Sabella v. Sec'y of Health & Human Servs.*, No. 02-1627, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008)).  The Federal Circuit has ruled that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."  *Saxton*, 3 F.3d at 1521.  Additionally, counsel have an obligation to monitor expert fees and costs.  *Simon v. Sec'y of Health & Human Servs.*, No, 05-941V, 2008 WL 623833, at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2008).

Here, I find that the time billed in Dr. Nikolskaya's initial invoice were reasonably spent.  (ECF No. 40, p. 3.)  These 23 hours were devoted to reviewing petitioner's medical records, conducting research, and drafting a report.  (*Id*.)  However, Dr. Nikolskaya subsequently issued a second invoice billing an additional 4.5 hours for an after-the-fact compilation of the medical literature supporting her opinion.  (*Id*. at 4.)  Because Dr. Nikolskaya previously billed for four hours of medical research, I do not see any possible justification for this additional billing.  I cannot accept at face value and without explanation that it was reasonable to take longer to subsequently compile the

---

[8] I recognize that in this case petitioner actually was willing, and in fact did, pay the expert costs at issue; however, she did so with at least some expectation that reimbursement would be pursued.  Specifically, her agreement with counsel indicated that her expenses "may also be subject to some level of reimbursement at the discretion of the court."  (ECF No. 43, p. 18.)  The point of this framing is to juxtapose her own willingness against the more objective, hypothetical petitioner who did not anticipate such reimbursement.

cited literature than it initially took to complete the research and identify the literature in the first instance. Moreover, it would have been far more reasonable for Dr. Nikolskaya to bookmark, download, copy, or otherwise retain the relevant articles as she was conducting her research. And, in any event, it is not readily apparent that the mere retrieval and compilation of this previously identified literature required the services of an expert neurologist billing at her full hourly rate. Accordingly, I will not award reimbursement of Dr. Nikolskaya's second invoice reflecting 4.5 hours of work.

### B. Additional Costs

Petitioner seeks $400 for the court's filing fee and $137.11 in other costs paid by counsel. (ECF No. 43, p. 5.) These costs are reasonable and have been sufficiently documented upon petitioner's amended motion.

### V. Conclusion

In sum, I find petitioner is entitled to an award of interim attorneys' fees and costs in a reduced amount as follows:

**Attorneys' Fees:**

**For 2018:**
| | | |
|---|---|---|
| (attorney) | $179 per hour (x9.575 hours) | $1,713.93 |
| (paralegal) | $132 per hour (x26.725 hours) | $3,527.70 |

**For 2019:**
| | | |
|---|---|---|
| (attorney) | $202 per hour (x5.8 hours) | $1,171.60 |
| (paralegal) | $135 per hour (x3.6 hours) | $486.00 |

**For 2020:**
| | | |
|---|---|---|
| (attorney) | $229 per hour (x10.075 hours) | $2,307.18 |
| (paralegal) | $141 per hour (x3.925 hours) | $553.43 |

**Fees Total:** **$9,759.84**

**Costs:**

| | | |
|---|---|---|
| (expert costs) | $425 per hour (x23 hours) | $9,775.00 |
| (to counsel) | | $537.11 |

**Costs Total:** **$10,312.11**

**Overall Total:** **$20,071.95**

In light of the above, petitioner's application for interim attorneys' fees and costs is **GRANTED** with reductions and **petitioner is awarded $20,071.95, representing reimbursement of interim attorneys' fees and costs as follows:**

- **a lump sum in the amount of $9,775.00 in the form of a check payable to petitioner; and**

- **a lump sum of $10,296.95, in the form of a check made payable to petitioner and her counsel, Bradley Hine, Esq.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[9]

**IT IS SO ORDERED.**

<u>s/Daniel T. Horner</u>
Daniel T. Horner
Special Master

---

[9] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).